## CLARK v. THE STATE OF OHIO.

*Criminal law—First degree murder—Facts necessary to establish insanity defense—Intelligence tests of defendant admissible to rebut defense—Argument to jury—Improper remarks may be objected to or answered—Insinuation that defendant's testimony result of improper influence not prejudicial, when—Evidence—Whether witness arrested after defendant, inadmissible—Asking improper question but once, not prejudicial, when.*

1. In proving defense of insanity in murder case, questions to be decided by jury are whether accused was free agent in forming purpose to kill, whether he was capable of judging right or wrong of act, and whether he knew at time that it was offense against law of God and man, and, if found in negative, accused would not have mental capacity to commit crime.

2. In prosecution of 19-year old defendant for murder, state, seeking to rebut claim that defendant lacked mental capacity to commit crime, was properly permitted to show intelligence of defendant disclosed by intelligence tests known as Stanford revision of Binet-Simon scale, Ohio literacy, and Parteus-Maze.

3. When improper argument is made, counsel may either allow statement to go unchallenged and answer it, or may object and take exception to overruling of objection.

4. Argument of prosecuting attorney, in murder prosecution, insinuating that defendant's testimony was given as result of improper influence, while not wholly proper, was not so flagrantly improper as to prevent fair trial, in view of contradiction between defendant's written statement and testimony.

5. Objection to question to witness for defendant, in murder prosecution, whether she had not been arrested since defendant was arrested, *held* properly sustained.

6. Asking of improper question of witness, objection to which was sustained, *held* not prejudicial error, where counsel did not persist in putting objectionable questions to witness.

(Decided June 21, 1926.)

ERROR:  Court of Appeals for Sandusky county.

*Mr. A. L. Kriesberg,* and *Mr. Ben H. Dewey,* for plaintiff in error.

*Mr. George C. Sheffler,* prosecuting attorney, for defendant in error.

WILLIAMS, J.  The plaintiff in error, William Clark, was tried on a charge of murder in the first degree for killing Ralph Hoffman.  The indictment contained two counts, one charging willful and intentional homicide with deliberate and premeditated malice, and the other charging homicide in attempting to perpetrate a robbery.  He was found guilty upon both counts without a recommendation of mercy, and was sentenced to die in the electric chair on July 8, 1926.  He prosecutes this proceeding in error to reverse the judgment of conviction.

The evidence shows that Clark had worked for Ralph Hoffman for several months during the summer of 1924.  Some time prior to the commission of the crime he had resolved to rob the Hoffmans, and in pursuance of that purpose, on February 6, 1926, armed with a revolver, he started for their home, which is located a few miles west· of Fremont, arriving there about 8 o'clock in the evening.  Finding no one at home, he entered the house, collected some property to carry away, ate some food, and slept a while.  At last the Hoffmans came home in their automobile about 11 o'clock. The defendant met them, pointed a loaded revolver at Hoffman, and compelled him, at his command, to put up his hands.  Thereupon Mrs. Hoffman exclaimed:  "That is you, Bill Clark."  The defendant claims that he then ordered the Hoffmans to

go into the summer house, and while they were about to do so he fired two shots from the revolver, as he claims, just to scare them. One bullet fired by the defendant struck the husband in the abdomen, and the other penetrated the center of the forehead of the wife, just below the roots of the hair. Mrs. Hoffman apparently died almost instantly. Her husband lingered until the next day, and, after stating that the defendant did the shooting over his protest not to shoot, died. A written statement made by the defendant showed that, in response to a question as to why he went to the house of the Hoffmans, he answered: "I needed the money and that was the only place I could think of to get it. I meant to rob them of their money."

Upon the trial of the case the defendant did not deny the shooting, but relied mainly upon the defense of insanity.

One of the alleged errors upon which plaintiff in error relies is the admission of certain testimony given by the witness R. P. Rauch. This witness was chief psychologist of the bureau of juvenile research. He does not undertake to express an opinion professionally as to the sanity or insanity of subjects under discussion, and did not undertake to express such an opinion as to the defendant. He did, however, testify as to the result of an examination of the defendant, which he made on the day previous to the time of giving his testimony, and undertook to express an opinion as an expert as to the normality of the defendant under three different intelligence tests known as the Stanford revision of the Binet-Simon scale, the Ohio literacy, and the Parteus-Maze. The witness testi-

fied that under the first system named the defend-
ant showed a mental capacity of a child 13 years
and 3 months old; under the second, that of a
child 14 to 15 years old; and under the third
that of a child 10 years old; and he stated, in reply
to a question of the state, that the defendant was
potentially normal, by which he meant to imply that
if he had examined the subject under more favor-
able circumstances his rating would probably have
been higher.   As the defendant was 19 years of
age, this testimony was significant.

Where the defense is insanity, the questions to
be decided by the jury upon that issue are these:
Was the accused a free agent in forming the purpose
to kill?   Was he at the time capable of judging
whether that act was right or wrong?   And, did he
know at the time that it was an offense against the
laws of God and man?   Blackburn v. State, 23
Ohio St., 146.   If the defendant was not a free
agent in forming the purpose to kill, and did not
know whether the act was right or wrong, and
that it was an offense against the laws of God
and man, he would not have the mental capacity
to commit the crime, and if he lacked mental capac-
ity, either by reason of a diseased condition of the
brain or native feebleness of mind and lack of in-
telligence, it would constitute a defense.   In an
attempt by the state to rebut the claim that the
defendant lacked mental capacity to commit the
crime, it was proper for the state to show the in-
telligence of the defendant disclosed by the tests of
intelligence under the systems referred to.   The
degree of intelligence possessed by the defendant
had a direct bearing on that question.   While it

seems that counsel for the defendant did not save any exceptions to the admission of this testimony, we have considered the matter as if the question had been properly saved.

It is also claimed that counsel appointed by the court to assist the prosecuting attorney was guilty of misconduct in his argument, which would warrant the granting of a new trial. The rule is stated in *Scott* v. *State,* 107 Ohio St., 475, 141 N. E., 19, as follows:

"Improper remarks of counsel for the state during argument, unless so flagrantly improper as to prevent a fair trial, should be at once objected to and exception taken; otherwise, error cannot be predicated upon the remarks alleged to have been improper."

While considerable language used by counsel was objected to, the only passage that we think merits attention is the following:

"In his statement on the stand evidently he had been coached during the trial of the case, and which was probably prepared, but he was very particular in his testimony to say that he only went there to rob the house and not the person, and there is a difference, and the court will probably explain it to you in the law he will give you."

No objection was made or exception taken to this statement at the time. When improper argument is made, counsel may take one of two courses. He may allow the statement to go unchallenged and answer it, or he may object, and, if the court does not sustain the objection, he may except. Counsel evidently chose the former, and permitted the statement to be made unchallenged. While we do

not approve the argument as one that is wholly proper, containing as it does an insinuation that the testimony of the defendant is given as the result of improper influence, yet we do think that the statement quoted, taken with the remainder of the argument of counsel, was not so flagrantly improper as to prevent a fair trial. A comparison of the testimony of the defendant with his voluntarily written statement shows that one or the other was false, in that in the statement he said he went to Hoffman's house to rob them of their money, while in his testimony he said that he went there to rob the house. Counsel was therefore justified in arguing that the defendant had falsified upon the witness stand in this respect. So giving the reason counsel did for the alleged false statement could hardly be said to have prevented a fair trial. The vital fact was that there was evidence to show it false, and this fact counsel was endeavoring to emphasize.

It appears that on cross-examination a witness for the defendant, Margaret French, was asked this question: "I will ask you if you have not been arrested since Bill was arrested."

This question was objected to, and the objection was sustained by the court. Counsel for defendant claim, however, that the mere fact that the question was asked is prejudicial to the defendant because it casts a stigma upon the witness. The court properly sustained the objection to this question under the rule laid down in *Keveney* v. *State,* 109 Ohio St., 64, 141 N. E., 845. We fail to see, however, that the defendant could be prejudiced by the question alone. If the mere asking of an improper question constituted prejudicial error, it would be

impossible to conduct a trial in such manner that the judgment would stand. The only way that the question of the admissibility of doubtful testimony can be raised is by the asking of a question. It is true that an examiner might persist in putting objectionable, insinuating questions to such an extent that prejudice might arise, but nothing of that kind is disclosed by the record in this case. The plaintiff in error has no just cause for complaint in this connection.

We are led to the belief that the defendant was proven guilty of the offense charged beyond all reasonable doubt and that he had a fair and impartial trial. The record is free from prejudicial error, and the judgment will therefore be affirmed.

*Judgment affirmed.*

RICHARDS, P. J., and HOUCK, J. (of the Fifth Appellate District, sitting in place of YOUNG, J.), concur.